UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY ANDERSON,

       Plaintiff,                        CIVIL ACTION NO. 06-12717

       v.                               DISTRICT JUDGE VICTORIA A. ROBERTS

COMMISSIONER OF                 MAGISTRATE JUDGE VIRGINIA M. MORGAN
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

      This Social Security case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated below, the court recommends that the Commissioner's motion be **GRANTED** and plaintiff's motion be **DENIED**.

**II. Background**

      On August 6, 2003, plaintiff filed an application for Supplemental Security Income (SSI), alleging that he was disabled due to paranoid schizophrenia, with a disability onset date of May 29, 1984. Tr. 39, 53. Plaintiff stated in his application that he was nervous and tense, that he heard voices, and that he had difficulty functioning around others as a result of his mental impairment. Tr. 53. Plaintiff was 42 years of age at the time of the filing. He has a tenth grade education. Tr. 59. Plaintiff was last employed in the early 1980s, when he worked in

construction. Tr. 62. From 1991 to July 1, 2003, plaintiff was incarcerated. He has not worked since his release from prison.

The Social Security Administration (SSA) denied plaintiff's claim on October 2, 2003. Tr. 25-29. Plaintiff then requested a hearing before an administrative law judge (ALJ). Tr. 30. The hearing was held on October 12, 2005, before ALJ John L. Christensen. Tr. 151-73. Plaintiff, represented by counsel, appeared and testified at the hearing. The ALJ also took testimony from plaintiff's mother and a vocational expert (VE).

On January 23, 2006, the ALJ issued a decision denying plaintiff's claim. Tr. 8-18. The ALJ determined that plaintiff had schizophrenia and that his impairment was "severe" within the meaning of 20 C.F.R. § 416.920(a)(4)(ii), but that his impairment did not meet the requirements of any impairment listed in Appendix 1, Subpart P of the Social Security regulations. The ALJ further determined that plaintiff had the residual functional capacity (RFC) to perform a range of light work and that there were a significant number of light jobs in the regional economy that he was capable of performing. Accordingly, the ALJ concluded that plaintiff was not "disabled" within the meaning of the Social Security Act.

On February 10, 2006, plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council. Tr. 6. The Appeals Council denied the request on April 13, 2006. Tr. 3-5. The ALJ's decision thus became the final determination of the Commissioner for purposes of judicial review.

On June 6, 2006, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). As noted above, the matter comes before the court on the

parties' cross-motions for summary judgment.  Plaintiff contends that the ALJ failed to adequately articulate the basis for his step three determination that plaintiff does not have an impairment of listing-level severity and that the ALJ's step-three determination is not supported by substantial evidence.  The Commissioner contends that the disability determination is supported by substantial evidence and should thus be affirmed.

### III.  Legal Standards

#### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The claimant bears of the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate both DIB and SSI claims.  20 C.F.R. § 416.920. In Foster, Id. at 354 (citations omitted), the Sixth Circuit discussed the process:

-3-

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

### B. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "[T]he decision of an ALJ is not subject to reversal, even if there is substantial

evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.  A reviewing court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001).

**IV. Analysis**

    **A.  Listings**

The ALJ determined that plaintiff's schizophrenia did not meet the requirements of § 12.03 of the listings.  Plaintiff contends that the ALJ failed to adequately articulate the basis for this finding and that the finding is not supported by substantial evidence.

As plaintiff correctly notes, an ALJ must provide specific reasons for the findings and conclusions he reaches.  The Sixth Circuit has repeatedly recognized that such articulation is not merely helpful to a reviewing court, but is "absolutely essential for meaningful judicial review." Hurst v. Secretary of Health and Human Services, 753 F.2d 517, 519 (6th Cir. 1985)(quoting Zblewski v. Schweiker, 732 F.2d 75, 78 (7th Cir. 1984)); see also Bailey v. Commissioner of Social Security, 173 F.3d 428, 1999 WL 96920 (6th Cir.(Ohio)).  Further, Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *4 (S.S.A.), provides that "[t]he rationale for a disability decision must be written so that a clear picture of the case can be obtained.  The rationale must follow an orderly pattern and show clearly how specific evidence leads to a conclusion."  The ALJ "must describe the weight attributed to the pertinent medical and nonmedical factors in the case and reconcile any significant inconsistencies."  Id.

While the ALJ's discussion of whether plaintiff's impairment meets the requirements of the listing is not extensive, the court concludes that the ALJ provided an adequate explanation for his conclusion. In order to establish disability under § 12.03, the claimant must demonstrate that his impairment meets the A and B criteria of the listing or that it meets the C criteria of the listing. Under the B criteria, the claimant must show at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) Marked difficulties in concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. The ALJ identified each of these factors, concluded that plaintiff had no marked difficulties and had not experienced repeated episodes of decompensation, and, in the body of the decision, discussed the evidence on which these findings were based. Further, the ALJ determined that the C criteria had not been met and, again, discussed in the body of the decision the evidence he relied on to support his decision. To be sure, the ALJ's articulation of the basis for his findings leaves much to be desired. However, the court concludes that the ALJ's explanation of his findings was sufficient to meet the requirements of SSR 82-62 and the prevailing case law.

The court also concludes that there is substantial evidence in the record to support the ALJ's conclusion that plaintiff's impairment did not meet the requirements of § 12.03 of the listings. Dr. Linda Brundage, a consulting psychologist, determined that plaintiff's impairment met neither the B nor the C criteria of the listing and, therefore, that he did not have a mental impairment of listing-level severity. Tr. 94-107. There are no contrary expert opinions in the record, and plaintiff points to nothing in the record that would cause the court to question Dr.

Brundage's opinion. Accordingly, the court finds that the evidence supports the ALJ's step-three determination.

### B. Residual Functional Capacity

After determining that plaintiff did not have an impairment of listing-level severity and that plaintiff had no past relevant work, the ALJ assessed plaintiff's RFC. The ALJ's RFC determination is set forth below:

> The claimant has the following residual functional capacity: light work with no climbing ropes, ladders, or scaffolds, can perform simple repetitive tasks in a low stress environment with minimal changes in the workplace setting and no more than occasional contact with the general public.

Tr. 17. At the hearing, the ALJ posed a hypothetical question to the VE based upon this RFC determination. In response, the VE testified that a person with such limitations could work as an assembler, a stock clerk, and a machine operator, and that there were approximately 72,000 such jobs in the State of Michigan. Tr. 169-70. Based on this testimony, the ALJ determined that plaintiff was capable of performing work that existed in significant numbers in the national economy and, therefore, that he was not disabled.

At step five of the disability determination process, the Commissioner may carry her burden of demonstrating that the claimant can perform other work through the testimony of a VE. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987). In order for the testimony of a VE to constitute substantial evidence, the hypothetical on which the testimony is based must fully and accurately incorporate all of the claimant's exertional and non-exertional limitations. Id.

With respect to the physical component of the ALJ's RFC determination, plaintiff does not claim to have any physical disabilities and there is no evidence in the record that he has any significant physical limitations. With respect to the mental component of the RFC determination, Dr. Brundage filled out a Mental RFC form in which she indicated that plaintiff had no marked limitations and that he had only moderate limitations in the following areas: (1) the ability to understand and remember detailed instructions, (2) the ability to carry out detailed instructions, (3) the ability to maintain attention and concentration for extended periods, (4) the ability to work in coordination with or proximity to others without being distracted by them, (5) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (6) the ability to interact appropriately with the general public, and (7) the ability to respond appropriately to changes in the work setting. Tr. 108-09. Dr. Brundage determined that plaintiff was not significantly limited in the other functional areas set forth in the form. Id. She concluded that plaintiff was capable of performing simple, repetitive work on a sustained basis. Tr. 110. The ALJ's RFC assessment is consistent with Dr. Brundage's findings. There are no contrary expert opinions or functional assessments in the record, and, as before, there is nothing in the record that would cause the court to question Dr. Brundage's assessment. Plaintiff's testimony regarding the functionally limiting effects of his impairment might warrant the conclusion that plaintiff is substantially more limited than Dr. Brundage found him to be. However, the ALJ found that testimony to be less than fully credible. An ALJ's credibility determination is entitled to significant deference, and the court is not

inclined on this record to disturb the ALJ's assessment of plaintiff's credibility. Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997). In further support of the mental component of the ALJ's RFC determination, the court notes that mental examinations have consistently yielded Global Assessment of Functioning (GAF) scores in the 50-60 range and that there is evidence in the record showing that plaintiff's condition is well-controlled with medication.[1]  Tr. 113-16, 127-33, 149.

There is no question that plaintiff suffers from schizophrenia and that his condition results in some functional limitations. However, the ALJ properly assessed plaintiff's RFC and accurately conveyed plaintiff's limitations to the VE. Accordingly, the VE's testimony constitutes substantial evidence in support of the ALJ's conclusion that plaintiff is not disabled because he remains capable of performing work that exists in significant numbers in the national economy. See, Varley, supra, 820 F.2d at 779.

**V.  Conclusion**

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED** and that plaintiff's cross-motion for summary judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific

---

[1] A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.).

objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

                                        s/Virginia M. Morgan
                                        VIRGINIA M. MORGAN
Dated: February 8, 2007               UNITED STATES MAGISTRATE JUDGE

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on February 8, 2007.

                                        s/Jane Johnson
                                        Case Manager to
                                        Magistrate Judge Virginia M. Morgan